## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

**ARSEAN LAMONE HICKS,**

       **Petitioner,**

**v.**                                           **Civil Action No. 3:15cv405**

**HAROLD W. CLARKE, DIRECTOR,**
**VIRGINIA DEPARTMENT OF CORRECTIONS,**

       **Respondent.**

### <u>MEMORANDUM OPINION</u>

This matter comes before the Court on Respondent Harold W. Clarke's[1] Motion to Dismiss Petitioner Arsean Lamone Hicks's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (the "Motion to Dismiss").[2] (ECF No. 6.) In support of the Motion to Dismiss, Clarke raises, among other purported defects, Hicks's failure to obtain leave from the United States Court of Appeals for the Fourth Circuit to file a second or successive petition in accordance with the requirements of 28 U.S.C. § 2244(b)(3)(A) of the Antiterrorism and

---

[1] Clarke is the Director of the Virginia Department of Corrections.

[2] 28 U.S.C. § 2254(a) states in relevant part:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he [or she] is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

Effective Death Penalty Act of 1996 ("AEDPA").[3]  Hicks has responded to the Motion to

Dismiss, (ECF No. 9), and Clarke has replied, (ECF No. 13).  The Court heard oral argument.

Accordingly, the matter is ripe for disposition.  For the reasons that follow, the Court will grant

the Motion to Dismiss, (ECF No. 6), and will dismiss Hicks's petition without prejudice, (ECF

No. 1).

## I.  Factual and Procedural Background

### A.    Factual Background

The Supreme Court of Virginia summarized the facts underlying the judgment that

Petitioner Arsean Lamone Hicks now challenges:

> In December of 1999, Hicks, then 16 years old, lived with his legal guardian, Haskell Corry, in Norfolk, Virginia.  Hicks shared a bedroom with Larry Roscoe. On December 26, 1999, Hicks, Roscoe, and two other persons robbed a pizza delivery driver.  During the robbery, Roscoe pointed his gun at the driver's head while Hicks took $50 from the driver's pocket and the other men took the pizzas. On December 27, 1999, Hicks committed a second armed robbery of a pizza delivery driver.
>
> Two days later, on December 29, 1999, Hicks, Farrell Richardson and Kenny Riddick agreed to rob another pizza delivery driver.  Hicks, wearing a mask and armed with Roscoe's gun, took the driver's money and the pizzas.  Hicks then drove away in the delivery driver's vehicle.   Later that evening, Hicks, Richardson and Riddick discussed robbing the Open House Diner in Norfolk, Virginia.  Just before 2:00 a.m. on December 30, 1999, Richardson and Riddick entered the Open House Diner.  After a few moments, Hicks, again wearing a mask and armed with Roscoe's gun, entered the diner, jumped across the counter, and announced the robbery.  He ordered an employee to open the cash register. As Hicks was removing money from the register, Lisa Bailey, an off-duty federal police officer, approached him displaying her badge in an attempt to prevent the robbery.  Hicks shot and killed the officer.  Hicks and Richardson fled the diner.

---

[3] 28 U.S.C. § 2244(b)(3)(A) provides:

Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application.

28 U.S.C. § 2244(b)(3)(A).

Riddick, who had remained in the diner, was questioned by the Norfolk Police officers when they arrived on the scene. Based on Riddick's statements, the officers obtained a search warrant for Hicks'[s] residence and yard. The police recovered a 9 millimeter handgun from the closet in the bedroom shared by Hicks and Roscoe. The officers also recovered pizza boxes from the establishments whose delivery drivers were robbed and items belonging to the delivery driver whose car was stolen by Hicks. Subsequent testing showed that the handgun found in the bedroom Hicks shared with Roscoe was the weapon that fired the bullet killing Officer Bailey at the Open House Diner.

*Hicks v. Dir., Dep't of Corr.*, 768 S.E.2d 415, 416–17 (Va. 2015).

**B.    <u>Procedural History</u>**[4]

The Commonwealth of Virginia returned an eleven-count indictment against Hicks for his involvement in the crimes committed on December 29 and 30, 1999. Before trial, Hicks pleaded guilty to carjacking, robbery, and two firearm charges related to the December 29 pizza robbery, but proceeded to trial on the charges related to the December 30 Open House Diner incident. A jury convicted him of first degree murder, robbery, conspiracy to commit murder, and two counts of using a firearm in the commission of a felony. On June 1, 2001, the Circuit Court for the City of Norfolk (the "Norfolk Circuit Court") sentenced Hicks to a total of 150 years' imprisonment, with 40 years suspended.

On May 13, 2002, Hicks filed a state habeas petition with the Norfolk Circuit Court. On August 22, 2002, the Norfolk Circuit Court ruled that Hicks was entitled to a delayed appeal, but dismissed his remaining claims. The court denied Hicks's post-judgment motions, and Hicks failed to timely appeal the denial of his habeas corpus claims. On September 13, 2002, the Court of Appeals of Virginia awarded Hicks a delayed direct appeal on the merits. Hicks alleged that

---

[4] The procedural history summarizes the events leading up to the current petition for habeas corpus as set forth by the Supreme Court of Virginia in *Hicks v. Dir., Dep't of Corr.*, 768 S.E.2d 415 (Va. 2015), the United States District Court for the Eastern District of Virginia in *Hicks v. Washington*, No. 1:05cv1405 (E.D. Va. Jan. 8, 2007) (Hilton, J.), and the Norfolk Circuit Court in *Hicks v. Clarke*, Rec. No. CL13-5688 (Nov. 8, 2013) (Martin, J.).

the Norfolk Circuit Court erred in (1) denying his motion to suppress his confession and (2) refusing to sever the indictment.

Despite stating a basis of newly found facts, the circumstances surrounding Hicks's confession appear to also animate the current habeas filing. Hicks has long claimed, and the Commonwealth has long denied, that officers obtained his confession using coercive methods. Specifically, during the Motion to Suppress hearing and at trial, Hicks testified that Norfolk Police Detective Glenn Ford repeatedly slammed his head against the table to force him to confess. (J.A. at 1294.) Detective Ford denied that he used physical force. (*Id.* at 1448.)

Hicks also has maintained that, although he was just 16 years old at the time of the interrogation, Detective Ford and Norfolk Police Investigator Brad Huffman improperly kept his guardian out of the interrogation room. (*See id.* at 1287, 1291 (testifying that Detective Ford had Hicks sign Miranda waiver without Investigator Huffman present, and told Hicks's guardian that the guardian had to leave after signing the Miranda waiver).) These allegations were denied in the suppression hearing and at trial.[5]

On August 13, 2003, the Court of Appeals of Virginia denied Hicks's petition for appeal, including the appeal of the denial of the motion to suppress. The Supreme Court of Virginia refused Hicks's petition for appeal on January 9, 2004.

On August 23, 2004, Hicks filed a petition for habeas corpus in the Norfolk Circuit Court, alleging: (1) that trial counsel provided ineffective assistance in failing to establish that his confession was coerced; (2) that his due process rights were violated by counsel's acts, perjury committed at trial, and the use of his coerced confession; and, (3) that appellate counsel erred by failing to raise the coerced confession issue on appeal. The Norfolk Circuit Court

---

[5] Investigator Huffman testified at trial that he was present when Hicks's guardian signed the Miranda waiver and asked to go home because he felt ill. (*See* J.A. at 1108, 1110.)

denied relief on November 23, 2004, and on June 2, 2005, the Supreme Court of Virginia dismissed Hicks's petition on procedural grounds.

On November 18, 2005, Hicks filed a petition for writ of habeas corpus in this District— his first federal habeas petition—alleging various claims, including ineffective assistance of counsel and the denial of his right to appeal. On January 8, 2007, the Honorable Claude M. Hilton, United States District Judge, denied Hicks's petition. On July 24, 2007, the Fourth Circuit denied Hicks's appeal.

In 2010, Detective Ford was charged with illegal job-related conduct. In their initial filings at bar, both parties cited newspaper accounts to describe Detective Ford's federal criminal case. In so doing, the parties characterized differently the details as to what Detective Ford's criminal prosecution encompassed. Hicks emphasized false confessions obtained over many years, while Clarke suggested the conduct involved "'taking money from criminal defendants in exchange for helping them secure lighter sentences' between 2003 and 2007." (Resp't's Reply 13 n.3, ECF No. 13) (quoting "Ex-detective's convictions invite scrutiny of old cases," THE VIRGINIAN-PILOT (Oct. 29, 2010), http://hamptonroads.com/2010/10/exdetectives-convictions-invite-scrutiny-old-cases.) Clarke quoted another part of that same article which stated: "[f]ederal prosecutors did not accuse [Detective Ford] of corrupting any of the homicide investigations he worked on." *Id.*

In 2011, Detective Ford was convicted in the United States District Court for the Eastern District of Virginia of two counts of extortion and a single count of lying to the FBI, stemming in part from his acceptance of tens of thousands of dollars to testify falsely that witnesses had given evidence in return for them receiving bail or a lighter sentence. (Resp't's Reply at 13 n.3; *Williams v. Brown*, Nos. 3:09cv769, 3:10cv505, 2016 WL 5388945, at *19 n.23 (E.D. Va. Sept.

26, 2016). Hicks noted in his initial filing that Detective Ford was the lead investigator in the so-called "Norfolk Four" case. (Pet. Habeas Corpus at 2 n.2, ECF No. 1.) Allegations of false confessions played a prominent role in the habeas petitions in those cases. (*Id.*) Detective Ford received a twelve and a half year sentence. (*Id.* at 2 n.3.)

On July 24, 2013, Hicks filed a third petition for writ of habeas corpus in the Norfolk Circuit Court. This time, Hicks contended that the Commonwealth had suppressed exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). Hicks specifically alleged that he was not notified of a recorded statement by Larry Roscoe to Detective Ford and Investigator Huffman. Hicks contended that Roscoe, on the day of his arrest, told Detective Ford that he owned "the gun, shoes, coat and mask" involved in the 1999 crimes of which Hicks was convicted. In support of his claim, Hicks submitted an affidavit from Roscoe—dated in 2006, seven years after the crime—in which Roscoe stated "at no time did anyone touch or use my items" and "its [sic] no way possible any of them could have committed those crimes, if these items are said to have been used." (Pet. Habeas Corpus Ex. I, ECF No. 1-9.) Hicks also offered an affidavit from Ferrell Richardson—dated in 2013, fourteen years after the crime—stating that Richardson held Roscoe's affidavit for six years before sending it to Hicks's girlfriend, Irene Cuffee. (Pet. Habeas Corpus Ex. H, ECF No. 1-8.) Cuffee mailed Roscoe's affidavit to Hicks in October 2012. (*Id.*)

In his petition at bar, Hicks emphasizes that Roscoe, prepped by Detective Ford, testified against Hicks at trial. At trial, contrary to the newly discovered affidavit, Roscoe testified he "didn't have [the gun] that night." (Pet. Habeas Corpus ¶ 13.) The prosecutor then commented in closing that Hicks's testimony would have made more sense if he had accused Roscoe and not "Moe." (Pet. Habeas Corpus ¶ 15.) Hicks suggests this new affidavit would have provided

valuable impeachment material, especially because no physical evidence tied Hicks to the gun. The Norfolk Circuit Court did not reach the merits of Hicks's *Brady* claim and dismissed it as untimely under Virginia Code § 8.01-654(A)(2).[6]

Hicks then appealed the denial of his third petition to the Supreme Court of Virginia. The Supreme Court of Virginia concluded that the Norfolk Circuit Court erred in finding that Hicks's petition was untimely, but nonetheless determined that Hicks procedurally defaulted his statutory tolling argument. *Hicks*, 768 S.E.2d at 420. To overcome his procedural default, Hicks had to demonstrate that he would suffer a "grave injustice" were the court to enforce it. *Id.* Acknowledging that "Roscoe's affidavit, on its face, is exculpatory," and assuming that the recorded statement existed and was not disclosed, the Supreme Court of Virginia examined whether the evidence was material. *Id.* Addressing *Brady* materiality, the Supreme Court of Virginia unanimously found as follows:

> Applying these factors to the evidence in this case, which includes transcripts from Hicks'[s] criminal trial, we cannot conclude that the suppression of Roscoe's statement undermines confidence in the outcome of Hicks'[s] trial. At his jury trial for the Open House Diner crimes, Hicks testified that he pled guilty to committing the December 29, 1999 pizza delivery robbery and carjacking crimes, which occurred only hours before the Open House Diner crimes. Hicks testified that he wore a mask and used Roscoe's gun in the commission of those crimes .... Hicks'[s] trial testimony conclusively established that Hicks not only had access to the murder weapon—Roscoe's gun—but also that he had actual possession of and control of it just hours before the murder of Officer Bailey. Hicks'[s] own testimony and the forensic evidence presented to the jury at trial is inconsistent with Roscoe's statements.

---

[6] Virginia Code § 8.01-564(A)(2) states:

A habeas corpus petition attacking a criminal conviction or sentence . . . shall be filed within two years from the date of final judgment in the trial court or within one year from either final disposition of the direct appeal in state court or the time for filing such appeal has expired, whichever is later.

Va. Code § 8.01-654(A)(2).

Furthermore, Hicks also testified that Roscoe did not commit the Open House Diner crimes because another man, known only as "Moe," committed the crimes.

The jury also heard Hicks'[s] recorded confession to the Open House Diner crimes, as given to the investigating officers. Although Hicks argued at trial that the confession was coerced, the verdict demonstrates that the jury did not find Hicks'[s] coercion claim credible.

*Id.* at 421. The Supreme Court of Virginia concluded that the nondisclosed evidence was "not material" and denied habeas corpus relief on February 26, 2015. *Id.* The court then denied Hicks's petition for rehearing on April 24, 2015.

Both parties have supplemented this Court's record with a notice regarding a recent decision. On September 26, 2016, the Honorable John A. Gibney, United States District Judge, found that two of the so-called Norfolk Four defendants, Danial Williams and Joseph Dick, "are innocent and, therefore, have satisfied the standard for a gateway claim of actual innocence." *Williams v. Brown*, Nos. 3:09cv769, 3:10cv505, 2016 WL 5388945, at *1 (E.D. Va. Sept. 26, 2016). In partial support of this finding, the *Williams* court ruled that "Detective Ford has a proven history of eliciting false confessions; he had previously been demoted for securing a series of false confessions . . . . [and he] also has a proven history of manipulating the criminal justice system for financial gain." *Id.* at *18. The Court explicitly observed with respect to Williams's and Dick's confessions that, "[l]eft to themselves, it appears that Williams and Dick could not accurately confess as to how the rape and murder occurred. The record is replete with instances where Williams, and Dick in particular, altered their confessions to accommodate details fed to them by the police." *Id.* at *21 n.25.

Williams's and Dick's confessions span a 1997–1998 time frame *and* involved self-incriminating trial testimony which the *Williams* court, on habeas, found to be false. *See id.* at *4–9, 21. Contrary to Clarke's earlier position here, these false homicide confessions *predate*

8

the 1999 conviction Hicks has challenged.  When giving notice of the *Williams* decision, Clarke maintained, without elaboration, that "Detective Ford's actions in an unrelated case are not relevant" to the case at bar, especially given its procedural posture.  (Resp't's Notice 2, ECF No. 17.)  Hicks contends otherwise.  (Pet'r's Resp. to Notice, ECF No. 18.)

        **C.**    **The Second Federal Habeas Corpus Petition**

    In 2015, Hicks filed the instant petition for habeas corpus, his second federal habeas petition, without first receiving authorization from a court of appeals.  Hicks alleges that the Commonwealth "breached its constitutional obligations under the Fourteenth Amendment by failing to disclose evidence exculpatory to Mr. Hicks." (Pet. Habeas Corpus 17.)  Hicks argues that the standard of review is *de novo* because neither the Norfolk Circuit Court nor the Supreme Court of Virginia adjudicated Hicks's claim on the merits when they failed to examine not just the affidavit, but a recorded version of Roscoe's exculpatory statement.[7]  (*Id.* at 18; Pet'r's Mem. Opp'n Mot. Dismiss 20–21, ECF No. 9.)  Clarke posits that Hicks's petition should be dismissed because it is successive, untimely, contingent on a procedurally defaulted claim, and otherwise lacks merit.  (Resp't's Br. Supp. Mot. Dismiss 6–25, ECF No. 7.)  The Court addresses Clarke's arguments to the extent necessary to make a ruling.

## II. Analysis

    For the reasons stated below, the Court will dismiss Hicks's Petition for Habeas Corpus without prejudice.  Despite the gravity of the matters raised by this petition, until and only if the

---

    [7] As noted, *supra*, the Norfolk Circuit Court did not address the merits and dismissed the petition with prejudice as untimely.  Hicks contends that, under *Winston v. Kelly,* 592 F.3d 535 (4th Cir. 2010), the Supreme Court of Virginia's decision should be afforded no deference because, when that court failed to review Roscoe's recorded statement, it operated on an incomplete record.  According to Hicks, this means that "deference to the state court's judgment would be inappropriate because judgment on a materially incomplete record is not an adjudication on the merits for the purposes of § 2254(d)." (Pet'r's Mem. Opp'n Mot. Dismiss 20–21, ECF No. 9 (quoting *Winston,* 592 F.3d at 555–56).)

Fourth Circuit authorizes consideration of a second or successive petition, this Court lacks

jurisdiction to hear Hicks's present challenge. Accordingly, at this juncture, the Court cannot

address the merits of Hicks's claim. The Court begins its analysis by outlining the so-called

"gatekeeping mechanism" within the federal habeas statue.

### A.    The Gatekeeping Mechanism of 28 U.S.C. § 2244

Under 28 U.S.C. § 2244, "[n]o . . . district judge shall be required to entertain an

application for writ of habeas corpus . . . if it appears that the legality of [the petitioner's]

detention has been determined by a judge or court of the United States on a prior application of a

writ of habeas corpus." 28 U.S.C. § 2244(a). Section 2244(a), however, is not without

exception. "Congress has empowered the courts of appeals to authorize the filing of a second or

successive habeas petition where 'the application makes a prima facie showing that the

application satisfies the requirements of [§ 2244(b)].'" *Evans v. Smith*, 220 F.3d 306, 323

(4th Cir. 2000) (alteration in original) (quoting 28 U.S.C. § 2244(b)(3)).  Thus,

> a petitioner may be able to present a claim for the first time in a successive habeas
> petition where the claim relies on a new rule of constitutional law, *see* 28 U.S.C.
> § 2244(b)(2)(A), or, if the claim is based on newly discovered evidence, where
> the petitioner can make a prima facie showing of both cause and prejudice within
> the meaning of § 2244(b)(2)(B)(i) and § 2244(b)(2)(B)(ii).

*Id.*[8]  At base, the gatekeeping mechanism of § 2244 affords a petitioner an "opportunity to bring

new claims where [he or she] can show that he [or she] was not at fault for failing to raise those

---

[8] Stated more fully, in order to comply with § 2244(b)(2), a claim presented for the first
time in a successive § 2254 application may not be reviewed unless:

> (A) the applicant shows that the claim relies on a new rule of constitutional law,
> made retroactive to cases on collateral review by the Supreme Court, that was
> previously unavailable; or

> (B)(i) the factual predicate for the claim could not have been discovered
> previously through the exercise of due diligence; and (ii) the facts underlying the
> claim, if proven and viewed in light of the evidence as a whole, would be

claims previously and where the claim, if meritorious, would sufficiently undermine confidence in the judgment at issue." *Id.*

The power to determine whether a claim satisfies the requirements of § 2244, however, does not lie with the district court. It "*must* be made by a court of appeals." *In re Williams*, 364 F.3d 235, 238 (4th Cir. 2004) (emphasis added). In the event a court of appeals has not authorized a petitioner to file a second or successive petition, the district court lacks jurisdiction to hear the claim. *See Evans*, 220 F.3d at 325 (noting district court lacked jurisdiction over *Brady* claim because court of appeals previously rejected authorization to file second or successive application); *see also United States v. Winestock*, 340 F.3d 200, 205 (4th Cir. 2003) ("In the absence of pre-filing authorization [from a court of appeals], the district court lacks jurisdiction to consider an application containing abusive or repetitive claims.").[9]

### B.    Hicks's *Brady* Claim Constitutes a Second or Successive Petition

Because Hicks concedes that he did not acquire authorization from a court of appeals to file the instant petition, the Court turns to Hicks's only argument in opposition to the Motion to

---

sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2244(b)(2).

[9] The Court notes that "Congress enacted § 2244(b) as part of the [AEDPA] in order to raise the threshold that a prisoner must cross to obtain review of claims presented in a successive application for collateral review." *In re Williams*, 364 F.3d at 238 (citing *Winestock*, 340 F.3d at 204); *see also Evans*, 220 F.3d at 323 ("These requirements serve the important interests in finality and respect for state court judgments that underlie the statutory habeas scheme." (citing *Williams v. Taylor*, 529 U.S. 420, 436 (2000)); *McCleskey v. Zant*, 499 U.S. 467, 493 (1991)); *cf. In re Goddard*, 170 F.3d 435, 436 (4th Cir. 1999) ("The new AEDPA amendments place much more stringent limits on a federal prisoner's ability to make second or successive § 2255 motions."). As the Fourth Circuit explained in *In re Williams*, the AEDPA alleviated the problem district courts faced, namely "a deluge of repetitive applications for collateral review." 364 F.3d at 238.

Dismiss: that this petition, while second-in-time, is not successive within the meaning of the AEDPA. The Court declines to adopt the rationale undergirding Hicks's argument. The Court concludes that this petition, based on what Hicks calls a newly found *Brady* claim, constitutes a successive petition under § 2244. Thus, Hicks must obtain authorization from a court of appeals before this Court has jurisdiction to address the merits of his *Brady* claim. For the reasons stated below, the Court will dismiss Hicks's petition without prejudice.

### 1. Not All Second-In-Time Habeas Petitions Are Second or Successive

The AEDPA does not define "second or successive." *In re Taylor*, 171 F.3d 185, 187 (4th Cir. 1999). Rather, the phrase "takes its full meaning from . . . case law, including decisions predating the enactment of [the AEDPA]." *Panetti v. Quarterman*, 551 U.S. 930, 943–44 (2007). Case law instructs that "not every numerically second petition is a 'second or successive' petition within the meaning of the AEDPA." *In re Williams*, 444 F.3d 233, 235 (4th Cir. 2006).

Courts, however, define narrowly those cases that may bypass the gatekeeping mechanism. Courts have found that a second-in-time filing may not be successive in at least three instances: (1) if the claim was not ripe at the time of the first petition; (2) if the claim was dismissed on technical grounds such as failure to exhaust state remedies or to pay fees; and, (3) if the first petition merely gained back the initial right to direct appeal. The crux of Hicks's argument asserts that his *Brady* claim fits within the first exception, ripeness.[10] It does not.

---

[10] Hicks does not invoke the second or third exceptions. These provisions generally rest on the premise that a petitioner could not realistically pursue the merits of his or her claim via the first-in-time filing. The courts allow the petitioner to return to a position where a petitioner may fully pursue the merits of a claim in a single petition.

For instance, the Fourth Circuit has recognized that "certain § 2254 and § 2255 motions that were dismissed for reasons such as . . . failure to exhaust state remedies, or [technical issues such as] failure to pay filing fees are not counted in determining whether a later motion is

2.      **A Second-In-Time Habeas Petition Need Not Pass Through the Gatekeeping Mechanism If the Claim Is Newly Ripe**

The Supreme Court of the United States has held that a numerically second § 2254

petition is not governed by the gatekeeping mechanism of § 2244(b)(2) if the claim was *not ripe*

at the time of the first petition. *See Panetti*, 551 U.S. at 942–47 (holding that a so-called *Ford*[11]

claim in a second application was not subject to the gatekeeping mechanism of the AEDPA

because the first petition was filed before the execution date was scheduled). Consistent with the

Supreme Court's guidance, the Fourth Circuit has confirmed that when the factual basis for a

claim does not arise until *after* a prior petition was filed, the new petition does not constitute a

successive one. *See, e.g.*, *United States v. Hairston*, 754 F.3d 258, 262 (4th Cir. 2014); *In re

Taylor*, 171 F.3d at 187–88.

Controlling cases hold that *Brady*-based second-in-time petitions do not fall within the

ripeness exception. Instead, courts conclude that the relevant question is whether the facts

underlying the *Brady* claim existed when the first petition was filed. As the Fourth Circuit

explained in *Evans*,[12] despite the fact that Evans could not present his *Brady* claim in his first

---

'second or successive.'" *In re Goddard*, 170 F.3d 435, 438 (4th Cir. 1999). When a court orders the payment of a fee, a petitioner might then pursue full consideration of the petition upon payment. Similarly, a motion mislabeled as a § 2255 petition should not "count" as an "actual" § 2255 petition. Also, a court can address the failure to exhaust state remedies by dismissal without prejudice in order to finish state proceedings. *See id.*

Finally, courts have held that a habeas that regained the original right to direct appeal "'resets to zero the counter of collateral attacks pursued.'" *Id.* at 437 (quoting *Shepeck v. United States*, 150 F.3d 800, 801 (7th Cir. 1998) (per curiam)). This means that, following a successful petition to regain a right to direct appeal, a petitioner returns to having all rights initially due had the direct appeal been available in the first instance.

[11] *See Ford v. Wainwright*, 477 U.S. 399, 410 (1986) (holding that the Eighth Amendment to the United States Constitution prohibits states from executing legally insane prisoners).

[12] In *Evans*, the petitioner filed his first habeas petition in district court in 1997, claiming a violation of *Batson* at the guilt phase of his murder trial, and ineffective assistance by counsel.

petition because he learned of exculpatory witness statements after he filed it, a procedure exists to raise the *Brady* claim in a second petition. The Fourth Circuit affirmed the denial of Evans's request for a stay of his first petition, reasoning that:

> the grant of a stay and subsequent leave to amend would have circumvented the habeas statute. Such action would have allowed Evans to file what would essentially be a second or successive petition while evading the prerequisites that Congress has established for filing such petitions.

220 F.3d at 322. Indeed, the court noted that a *Brady* claim based on newly discovered evidence is "precisely the type of situation" the AEDPA was designed to account for. *Id.* at 323; *see also Gage v. Chappell*, 793 F.3d 1159, 1165 (9th Cir. 2015) (distinguishing between claims in which the factual predicate came into existence after the first habeas petition was filed and claims that qualify as second or successive because they were ripe at the time the first habeas petition was filed but not yet discovered).

### 3. *Evans* Controls the Designation of Hicks's Petition as Second or Successive

In spite of *Evans,* Hicks relies on *Hairston* and *Taylor* to assert that his *Brady* claim is not successive within the meaning of § 2244(a). Hicks suggests that, at the time of his first petition, he did not know the facts or evidence giving rise to his *Brady* claim—*i.e.*, Roscoe's taped exculpatory recorded or written statement—because the prosecution violated *Brady* by not turning them over. Importantly, Hicks does not argue that Roscoe's recorded statement did not exist at the time of his first habeas. He instead contends that the Commonwealth withheld

---

220 F.3d at 311. Evans later filed a motion seeking a stay so he could exhaust a *Brady* claim in state court regarding witnesses who could offer exculpatory evidence. The district court denied the stay and habeas relief. *Id.* The Fourth Circuit affirmed the denial of the stay for the reasons stated above. Citing, among other things, overwhelming evidence of guilt, the court eventually denied authorization to file a successive petition. The court found that Evans had failed to make a prima facie showing that his application met the cause and prejudice standards of § 2244(b)(2)(B)." *Id.* at 322 n.5; *see id.* at 323.

Roscoe's "recorded statement" in violation of *Brady*. In contrast, in *Hairston* and *Taylor*, entirely new facts developed after the first-in-time petition had been filed, not facts that had previously existed but were newly discovered by those petitioners. Hicks's reliance on *Hairston* and *Taylor* is misplaced.

In *Hairston*, the district court denied Hairston's first habeas petition. 754 F.3d at 259. The state court then vacated a prior conviction that had affected his criminal history score at sentencing, so Hairston filed a second-in-time § 2255 motion seeking a resentencing hearing. *Id.* The Fourth Circuit explained that "the facts relied on by the movant seeking resentencing did not exist when the numerically first motion was filed and adjudicated." *Id.* at 262. Therefore, Hairston's "claim was unripe at the time his numerically first motion was adjudicated," and the second-in-time petition was not successive within the meaning of the AEDPA. *Id.* Unlike Hairston's post-habeas reversal of conviction, Hicks's claim presupposes that Roscoe's statement existed in 1999 and was unconstitutionally secreted by the government at that time.

Similarly, in *Taylor*, the petitioner sought to challenge via his second-in-time petition "only issues that originated during a resentencing hearing which resulted from his previously successful § 2255 motion." 171 F.3d at 186. The Fourth Circuit explained that the second petition constituted Taylor's "first opportunity to assert new issues which arose during his resentencing hearing." *Id.* at 188 (noting that the facts giving rise to the second petition had not yet happened at the time Taylor filed the first petition). Finding Taylor's second petition not second or successive, the Fourth Circuit concluded that Taylor needed no certification and directed the district court to accept the filing. *Id.* at 187–88. Because Hicks does not bring newly developed facts, but instead raises newly discovered evidence, under *Evans* and pursuant

15

to § 2244(b)(2)(B), he must now seek permission from the Fourth Circuit to bring a petition based on his *Brady* claim.

### 4.    *Hairston* and *Williams* Do Not Overrule *Evans*

Hicks also incorrectly maintains that *Hairston*, 754 F.3d 258, and *Williams,* 444 F.3d 233, "effectively overrule" *Evans*. (Pet'r's Resp. at 7, ECF No. 9.) Hicks misreads the law. First, *Hairston* does not overrule *Evans* for the reasons stated above:  the factual underpinning of the two claims differ to a material degree. *Evans*, and not *Hairston*, controls Hicks's case.

Second, in *Williams*, the Fourth Circuit addressed a circumstance where a petitioner successfully pursued a direct appeal claim, but did so while the court addressed additional substantive claims in his first habeas.  The Fourth Circuit concluded that the "direct appeal" exception reset "to zero" the "'counter of collateral attacks pursued.'" *Williams*, 444 F.3d at 235 (quotation omitted); *see supra* n.10.  The *Williams* court also ruled, however, that the counter of collateral attacks pursued as to the decision on the *merits* could not be "restarted," so the second-in-time petition could not re-litigate those issues.  "In such a case," the Fourth Circuit explained, "'the district court should afford the applicant an opportunity to elect between deleting the improper claims [previously decided on the merits] or having the entire motion treated as a successive application.'"  *Id.* (quoting *United States v. Winestock*, 340 F.3d 200, 207 (4th Cir. 2003)).

Nothing in *Williams* abrogates or overrules *Evans*.  Nor does it aid Hicks's position here. The procedural path taken by Hicks differs entirely from Williams's.  Hicks earned a right to a delayed appeal, and Hicks's first substantive petition addressed the merits apart from his appeal. Hicks now seeks to address newly discovered evidence in his second federal habeas. *Williams* does not alter *Evans*'s application to this case.

16

### 5.   The Out-of-Circuit Cases Cited Do Not Alter *Evans*'s Application to Hicks's *Brady* Claim

Finally, despite this circuit's controlling precedent in *Evans*, Hicks urges the Court to turn to decisions by the United States Court of Appeals for the Ninth Circuit in *United States v. Lopez*, 577 F.3d 1053 (9th Cir. 2009), and the United States Court of Appeals for the Tenth Circuit in *Douglas v. Workman*, 560 F.3d 1156 (10th Cir. 2009). Even were this Court inclined to ignore binding law, which it is not, neither case persuades in the manner Hicks maintains. A close review shows that these cases do not, as Hicks suggests, stand for the proposition that a *Brady*-based habeas claim may bypass the gatekeeping mechanism of § 2244.

In *Lopez*, the petitioner learned long after she filed her first habeas petition that a DEA agent had failed to disclose that, before Lopez's trial, he had received a phone call from a local law enforcement official stating that the local police no longer used an informant who would testify against Lopez because they deemed him unreliable. *Id.* at 1057. Lopez filed a second-in-time habeas petition. *Id.* at 1059. Choosing to allow this *Brady* claim to come to the district court first, the "district court rejected the government's argument that the court lacked jurisdiction to hear the motion because it was barred by [the gatekeeping mechanism articulated in] 28 U.S.C. § 2255(h) as 'second or successive.'" *Id.* at 1055. The district court denied the motion on the merits, "finding that the impeachment evidence would not have materially affected the guilty verdict." *Id.* at 1059. Lopez appealed.

The Ninth Circuit analyzed the "'abuse-of-the-writ' doctrine developed in pre-AEDPA cases" and suggested, without holding, that some meritorious second-in-time *Brady* claims may be exempt from the gatekeeping mechanism. *Id.* at 1066. At the same time, the *Lopez* court rejected the notion that *Brady* claims are categorically exempt from the gatekeeping function. *Id.* at 1066–67; *see also Gage*, 793 F.3d at 1165 (declining to extend exceptions to the gatekeeping

17

mechanism to all *Brady* claims).  Indeed, when rebuffing the notion of such a categorical

exemption, the *Lopez* court stated that "no court has ever held AEDPA expands the availability

of habeas relief or allows federal courts to consider claims that would have been barred under the

abuse-of-the-writ doctrine."  *Lopez*, 577 F.3d at 1066.

     As a result, the court vacated the district court's order denying Lopez's motion

and remanded with instructions to dismiss for lack of jurisdiction.  *Id.* at 1069.  The

court also denied Lopez's appeal, which it construed as a motion for authorization to file

a second or successive petition.  *Id.*  In short, the hypothetical musings articulated in

*Lopez* do not establish that a *Brady*-based habeas claim may bypass § 2244's

gatekeeping mechanism.

     *Douglas*, from the Tenth Circuit, involved co-defendants (Douglas and Powell) who were

tried and sentenced to death in separate jury trials almost two years apart.  560 F.3d at 1163,

1165.  Long after both trials (and four months after the district court denied Douglas's first

habeas petition) a key eyewitness to the murder in both trials recanted his testimony and

described egregious and willful prosecutorial misconduct in obtaining and using his testimony.

*Id.* at 1167.  Unlike Douglas, Powell was able to timely file his first habeas petition after learning

about the recantation.  *Id.* at 1169.  The court "conclude[d] that under the unique circumstances

of this case . . . it is more appropriate to treat Mr. Douglas's *Brady* claim as a supplement to the

prosecutorial misconduct claims he alleged in his initial habeas petition."  *Id.* at 1187 (holding

that Douglas need not satisfy § 2244(b)(2)(B)'s requirements for pursuing a second or successive

habeas petition before he can obtain habeas relief).

     *Douglas* offers an avenue of relief not available to Hicks:  the supplementation of a filed

prosecutorial misconduct claim in a first-in-time habeas petition.  Even were the Court inclined

to adopt the level of umbrage expressed in the *Douglas* decision, the law of this circuit, and the statute at issue, require the circuit court to review Hicks's *Brady* claim in the first instance. Nothing in *Douglas* mandates that this court do otherwise. While Hicks may imply that this case shares some of the "unusual circumstances"[13] of governmental misconduct that drove the *Douglas* decision, this court confronts a different procedural posture altogether. During Hicks's previous habeas filings, courts have reviewed at least some evidence of Detective Ford's misconduct. Under *Evans*, § 2244, and the facts before this Court, Hicks's current attempt to bring to light what he calls an unconstitutionally suppressed statement must be reviewed, in the first instance, at the appellate level.[14]

---

[13] The *Douglas* court explained:

> Here, under the unusual circumstances presented in this case, it makes sense to allow Mr. Douglas to supplement his previously asserted prosecutorial misconduct claim with his Brady allegations, which involve proven willful misconduct by the prosecutor in eliciting Smith's false testimony at Mr. Douglas's trial, in using that false testimony to improperly vouch for Smith's veracity to the jury during closing arguments, and in taking affirmative action to cover up the tacit agreement the prosecutor made with Smith in exchange for Smith's testimony against Mr. Douglas. Because the prosecutor acted willfully, and not just negligently or inadvertently, his conduct warrants special condemnation and justifies permitting Mr. Douglas to supplement his initial habeas petition.

*Id.* at 1189–90.

[14] Hicks has also filed a Motion for Discovery, seeking all documents relating to Roscoe's statements to Detective Ford regarding the Open House Diner robbery. (ECF No. 10.) Clarke has responded to the Motion for Discovery, opposing it in nearly all respects, (ECF No. 12), and Hicks has replied, (ECF No. 14). This Court will deny the Motion for Discovery as moot given the dismissal of Hick's petition.

Still, the court remains perplexed by the Commonwealth's reluctance, stated during oral argument, to investigate whether a recorded statement exists. This case involves a 150-year sentence imposed on a 16-year-old, who confessed before two detectives without a guardian present. Hicks challenged his confession as coerced at trial and has maintained that position. One of the detectives has since been convicted of corruptly obtaining false confessions. While the Court sees that the confession repeatedly has been found to be constitutional, it hopes that the government takes its position, even in this third habeas petition, mindful not just of its need "to

### III.  Conclusion

Under Fourth Circuit precedent, when new evidence surfaces after a prisoner's habeas petition has been adjudicated, the prisoner becomes entitled to a "second bite," but only if the requirements of § 2244(b) have been satisfied.  At least one court has ruled that, under the law of this circuit, "all *Brady* claims are subject to [the] AEDPA's gatekeeping provision." *Witherspoon v. Stansberry*, No. 3:10cv323, 2011 WL 3269645, at *2 (E.D. Va. July 29, 2011) (Payne, J.) (citing *Evans*, 220 F.3d at 323).  Even short of such a finding, the Court concludes that Hicks's petition constitutes a "second or successive" petition within the meaning of the AEDPA.

This case traverses serious legal matters.  Any officer convicted of criminal misconduct casts a pall on the appearance of justice.  Any officer killed while intervening in criminal conduct deserves a just and full trial of the person charged with being responsible for her death.  And any juvenile receiving a 150-year sentence without parole deserves as complete a review of his case as the law permits.  That said, the Court does not have jurisdiction to hear Hicks's claim until, and only if, a court of appeals authorizes consideration of this second or successive petition.

For the foregoing reasons, the Court will grant Clarke's Motion to Dismiss, (ECF No. 3), dismiss without prejudice Hicks's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254, (ECF No. 1), and deny as moot Hicks's Motion for Discovery, (ECF No. 10).

An appeal may not be taken from an order in a § 2254 proceeding unless a judge issues a certificate of appealability.  28 U.S.C. § 2253(c)(1)(A).  A certificate of appealability will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right."

---

win a case, but [also] that justice shall be done." *Berger v. United States*, 295 U.S. 74, 88 (1935).

28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). Given the procedural posture before it, the Court will deny a certificate of appealability.

An appropriate order shall issue.

_____
/s/
M. Hannah Lauck
United States District Judge

Richmond, Virginia
Date: 9/30/16